```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
COMMODITY FUTURES TRADING COMMISSION,    :
                                         :
                         Plaintiff,      :
                                         :   18 Civ. 8914 (VM)
          - against -                    :
                                         :   DECISION AND ORDER
TFS-ICAP, LLC, et al.,                   :
                                         :
                         Defendants.     :
-----------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/7/20

**VICTOR MARRERO, United States District Judge.**

Plaintiff Commodity Futures Trading Commission ("CFTC" or the "Commission") brings this action against defendants TFS-ICAP, LLC, TFS-ICAP Ltd. (together with TFS-ICAP, LLC, "TFS-ICAP" or the "Corporate Defendants"), Ian Dibb ("Dibb"), and Jeremy Woolfenden ("Woolfenden," and together with Dibb, the "Individual Defendants") (collectively, "Defendants"). The complaint alleges violations of the Commodity Exchange Act (the "Act") and associated Commission regulations. (See "Complaint," Dkt. No. 5, ¶¶ 151-85.)

Before the Court are the pre-motion letters submitted by Dibb seeking leave to file a motion to dismiss Count III of the Complaint. The Court construes such letters as a motion by Dibb to dismiss Count III pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") (the "Dibb

Motion").[1] For the reasons set forth below, the Dibb Motion is DENIED.

## I. BACKGROUND[2]

Consistent with the Court's Individual Practices, on February 11, 2019, counsel for Dibb wrote to the CFTC regarding an anticipated motion to dismiss the Complaint.[3] ("February 11 Letter," Dkt. No. 37.) Dibb argues, first, that the Complaint fails to allege control person or supervisory liability of Dibb. He writes that the Complaint does not allege that the financial practice known as "flying prices" clearly violates the Commodity Exchange Act ("CEA" or the "Act"), and relatedly, that he had no knowledge of the practice of "printing trades," in part because the CEA does not cover his pre-2011 activities in London. (Id. at 1-2.) Second, Dibb argues that the Complaint fails to allege materiality because it does not indicate whether the flown prices and printed trades were important to investor

---

[1] Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.) (affirming district court ruling deeming exchange of letters as motion to dismiss).

[2] The Court assumes the parties' familiarity with the facts and procedural history of this case and refers to its recently issued decision in this proceeding, which summarizes the Complaint. (See "Woolfenden Order," Dkt. No. 54.)

[3] The Court also received pre-motion letter exchanges from the Corporate Defendants and Woolfenden. Each of those letter exchanges also contemplated a motion to dismiss the Complaint. On November 20, 2019, the Court denied the motion so deemed by the Court as filed by Woolfenden to dismiss the Complaint pursuant to Rule 12(b)(2). (See Woolfenden Order.)

2

decisions. (Id. at 3.) Third, Dibb argues that Count III of the Complaint fails to allege anti-competitive conduct, as required by Section 4c(a)(1)-(2) of the Act, 7 U.S.C. § 6c(a)(1)-(2) ("Section 4c(a)(1)-(2)" or "Section 4c"). Specifically, Dibb argues that a "fictitious sale," as prohibited by Section 4c(a)(1)-(2), requires the CFTC to allege "collusive, anti-competitive, or risk-negating behavior, or allegations of such intent." (February 11 Letter at 3.)

By letter dated February 22, 2019, the CFTC responded to the February 11 Letter. (See "February 22 Letter," Dkt. No. 39.) The CFTC argues, first, that the Complaint sufficiently alleges that flying prices violates the Act. (Id. at 1.) Second, the CFTC argues that the Complaint sufficiently alleges that flying prices and printing trades constitute material misrepresentations. (Id. at 1-2.) Third, the CFTC contends that the Complaint sufficiently alleges Dibb's constructive knowledge of the violations or, at the very least, that Dibb was "willfully blind" to such conduct, thereby meeting the test for control-person liability, and alternatively the CFTC asserts that the Complaint alleges Dibb lacked good faith. (Id. at 2-3.) Fourth, the CFTC points to allegations in the Complaint that the flown prices and

3

printed trades were material. (Id. at 3.) Finally, the CFTC states that the allegations in the Complaint fall squarely within the scope of Section 4c(a)(1)-(2) because that provision was designed to prohibit fictitious sales and any transaction that causes the recording of a non-bona-fide price and because the Complaint alleges that the prices reported by TFS-ICAP brokers to the market did not reflect the normal competitive forces of supply and demand. (Id.)

By letter dated March 18, 2019, Dibb responded to the February 22 Letter. (See "March 18 Letter," Dkt. No. 42.) Dibb reiterated his belief that a motion to dismiss was warranted. The Court held a telephone conference with counsel for the Corporate Defendants and counsel for Dibb on April 4, 2019 (the "April 4 Telephone Conference"). (See Dkt. Minute Entry dated 4/4/2019.) During the April 4 Telephone Conference, the Court indicated to the parties its preliminary view that the Complaint alleges sufficient facts to survive a Rule 12(b)(6) motion to dismiss. However, the Court also indicated that it would entertain further argument regarding Count III of the Complaint, which alleges that TFS-ICAP entered into and confirmed fictitious sales and transactions used to cause the reporting of untrue and non-bona fide prices. The Court therefore afforded Dibb the

4

opportunity to submit an additional three-page letter regarding his arguments for dismissal of Count III of the Complaint, and the Court also afforded the CFTC an opportunity to respond to Dibb's supplemental letter.[4]

By letter dated November 27, 2019, Dibb set forth his arguments for why Count III of the Complaint should be dismissed. (See "November 27 Letter," Dkt. No. 55.) Dibb argues that the allegations in Count III are insufficient for three reasons. First, the Complaint fails to allege any "pre-arrangement or private, collusive, or anti-competitive activity on the part of TFS's brokers" because it alleges that TFS was acting "on its own" and "not in coordination with any competitor." (Id. at 2.) Second, Dibb argues that the flown prices and printed trades sparked market interest and fueled market activity, resulting in more competition, instead of "dampen[ing] the forces of supply and demand." (Id. at 3.) Third, Dibb contends that the Complaint fails to allege that TFS's brokers had the requisite intent to negate risk or price competition and avoid a bona fide market position. (Id.)

---

[4] The Court set deadlines for the submission of such letters in the Woolfenden Order. (Woolfenden Order at 37.)

By letter dated December 6, 2019, the CFTC responded to the November 27 Letter. (See "December 6 Letter," Dkt. No. 56.) The CFTC argues that Dibb's arguments depend on an artificially constrained interpretation of both the statutory text and the cases interpreting it. According to the CFTC, Section 4c of the CEA squarely covers the allegations in Count III of the Complaint. Section 4c(a)(1)-(2) makes it unlawful to enter into, offer to enter into, or confirm the execution of certain transactions, including a "fictitious sale" and any transaction "used to cause any price to be reported, registered, or recorded that is not a true and bona fide price." 7 U.S.C. § 6c(a). The CFTC disputes that the statute requires collusion between two parties as in, for example, a prearranged trade. (Id. at 1-2.) Furthermore, the CFTC argues that the case law does not clearly require it to show intent, but even if it did, that requirement is met here, given that the TFS brokers take no proprietary position and thus any flying prices and printing trades were, by definition, intended to avoid a market position. (Id. at 2-3.)

Given this detailed and extensive letter exchange, the Court now construes the February 11 Letter, March 18 Letter, and November 27 Letter from Dibb as a motion to dismiss Count

III of the Complaint pursuant to Rule 12(b)(6) for failure to state a claim.

## II. **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 573-74 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit

Suisse First Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006); accord In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013). In this context, the Court must draw reasonable inferences in favor of the non-moving party. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the claim as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

### III. DISCUSSION

The Court will deny the Dibb Motion. Dibb urges the Court to hold that the allegations in the Complaint do not make out a violation of Section 4c, but his arguments are not supported by the text of the statute or the case law on which he relies. Thus, at this stage of the proceedings, the Court is satisfied that Count III of the Complaint states a claim to relief that is plausible on its face.

Dibb's first argument is that the Complaint "fails to allege pre-arrangement or private, collusive, or anti-competitive activity on the part of TFS's brokers." (November 27 Letter at 2.) The plain terms of the statute do not require collusion: Section 4c(a)(1)-(2) makes it unlawful "to offer to enter into, enter into, or confirm the execution of a

transaction" if the transaction is a "wash sale," an "accommodation trade," or a "fictitious sale," or if the transaction "is used to cause any price to be reported, registered, or recorded that is not a true and bona fide price." 7 U.S.C. § 6c(a)(1)-(2). Nor does the case law interpreting Section 4c require collusion. Dibb cites to cases indicating that a "prearranged trade is a textbook example of a fictitious sale," but a prearranged trade is just that: an example. In the Matter of: Absa Bank, CFTC No. 14-30, 2014 WL 4793544, at *2 (2014). While the prohibition on fictitious sales may have been "intended generally to prevent collusive trades conducted away from the trading pits," nothing in the statute requires such collusion. Merrill Lynch Futures Inc. v. Kelly, 585 F. Supp. 1245, 1251 n.3 (S.D.N.Y. 1984) (suggesting that the reporting of a collusive, fictitious sale would also violate the CEA by virtue of being non-bona fide).

Similarly, even if the conduct alleged bears little similarity to wash sales, wash sales comprise simply one specific type of conduct prohibited by the statute. Absa Bank, 2014 WL 4793544, at *2 ("[The] term [fictitious sale] *includes* wash sales, accommodation trades, and prearranged trades." (emphasis added)). The fact that "TFS was acting on its own,

9

not in coordination with any competitor" (November 27 Letter at 2) does not shield it from charges that it transacted in order to "cause any price to be reported, registered, or recorded" that was not a bona fide price. 7 U.S.C. § 6c(a)(2). In sum, the Court declines the invitation to read into the statute the limitations urged by Dibb.

Dibb's second argument is that the Complaint is deficient because it fails to allege that the trading practices "dampened the forces of supply and demand, or permitted TFS to 'evade the competition of the open market.'" (November 27 Letter at 3 (quoting In the Matter of: Christopher Chapman, CFTC No. 03-08, 2003 WL 1485947, at *3 (2003)).) Dibb argues that the practice of flying prices and printing trades actually "spark[ed] market interest and fuel[ed] market activity, which resulted in more competition." (Id.) This argument is meritless for reasons similar to those discussed above. Dibb does not clearly explain how publishing fictitious transactions on a trading platform would facilitate competition in a manner approved of, permitted by, or even contemplated in the CEA. If Congress intended to create such a safe harbor, surely it would have clearly stated so in the statutory text. Nor do the cases cited by Dibb support this proposition, as they merely stand

10

for the uncontroversial proposition that "[i]f a person attempts to evade the risks and price competition of the open market, such trading schemes are generally prohibited as fictitious sales." In the Matter of: INTL FCStone Financial Inc., CFTC No. 18-05, 2017 WL 5517033, at *3 (2017); see also Christopher Chapman, 2003 WL 1485947, at *3 ("Fictitious sales also include trading schemes that evade the competition of the open market." (internal quotation marks omitted)).

Third, Dibb argues that the Complaint does not sufficiently allege that TFS brokers had the necessary intent "to negate risk or price competition and avoid a bona fide market position." (November 27 Letter at 3 (quoting In the Matter of: Martin A. Lorenzen, CFTC No. 13-16, 2013 WL 525841, at *3 (2013)).) As an initial matter, "issues of intent and motive are typically factual inquiries that should not be decided on a motion to dismiss 'unless the nonmovant has failed to allege any evidence ... that the defendants acted with scienter.'" LBBW Luxemburg S.A. v. Wells Fargo Securities LLC, 10 F. Supp. 3d 504, 517 (S.D.N.Y. 2014) (quoting In re JWP Inc. Sec. Litig., 928 F. Supp. 1239, 1256 (S.D.N.Y. 1996) (internal alteration omitted)). At this stage, the CFTC has alleged sufficient evidence of scienter. While "[i]t is true that the [CFTC] must prove intent to

establish a violation" of Section 4c, Reddy v. Commodity Futures Trading Comm'n, 191 F.3d 109, 119 (2d Cir. 1999), the cases relied upon by Dibb -- those that stand for the proposition that the CFTC must specifically allege an intent to negate risk or price competition and avoid a bona fide market position -- involved prearranged trades. Martin A. Lorenzen, 2013 WL 525841, at *3 (intent can be inferred from the prearrangement); Absa Bank, 2014 WL 4793544, at *2-3 (similar). These cases are less clearly applicable to the factual pattern here, where, as both parties note, the brokers took no proprietary positions and thus were not subject to market risk in the first place.[5] While Dibb maintains that the Complaint merely alleges that TFS brokers "attempted to create the appearance of liquidity to facilitate even more competitive trading" (November 27 Letter at 3), this argument goes more to motive than intent, and "motive is not an essential element of a trade practice offense." Reddy, 191 F.3d at 119. In any event, at this stage the Court need only determine whether the CFTC has "failed to adduce *any* evidence ... that the defendant[s] acted with scienter." In re JWP Inc. Sec. Litig., 928 F. Supp. at 1256 (emphasis added). The

---

[5] Dibb argues that "Section 4c(a)(1) was designed to constrain traders . . ., not brokers," but cites to no authority for this position, much less any persuasive authority for why the CFTC may not bring an enforcement action against brokers. (November 27 Letter at 3.)

Complaint is sufficient in this regard. (See Complaint ¶¶ 51-61.)

## IV. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendant Ian Dibb to dismiss (Dkt. Nos. 37, 42, and 55) Count III of the Complaint of plaintiff Commodity Futures Trading Commission (Dkt. No. 5) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **DENIED**.

**SO ORDERED.**

Dated:   New York, New York
         7 January 2020

                                                            _____
                                                                    Victor Marrero
                                                                       U.S.D.J.