USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/22/20

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
COMMODITY FUTURES TRADING COMMISSION,   :
                                        :
                        Plaintiff,      :
                                        :   18 Civ. 8914 (VM)
        - against -                     :
                                        :   DECISION AND ORDER
TFS-ICAP, LLC, et al.,                  :
                                        :
                        Defendants.     :
----------------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff Commodity Futures Trading Commission ("CFTC" or the "Commission") brings this action against defendants TFS-ICAP, LLC, TFS-ICAP Ltd. (together with TFS-ICAP, LLC, "TFS-ICAP" or the "Corporate Defendants"), Ian Dibb ("Dibb"), and Jeremy Woolfenden ("Woolfenden," and together with Dibb, the "Individual Defendants") (collectively, "Defendants"). The complaint alleges violations of the Commodity Exchange Act, 7 U.S.C. § 1 et seq. (the "Act") and associated Commission regulations. (See "Complaint," Dkt. No. 5, ¶¶ 151-85.)

Before the Court are the pre-motion letters submitted by the Corporate Defendants seeking leave to file a motion to dismiss the Complaint. The Court construes such letters as a motion by TFS-ICAP to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") (the "Motion").[1] For the reasons set forth below, the Motion is DENIED.

---

[1] Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.) (affirming district court ruling deeming exchange of letters as motion to dismiss).

## I. BACKGROUND[2]

Consistent with the Court's Individual Practices, on November 27, 2018, counsel for TFS-ICAP wrote to the CFTC regarding an anticipated motion to dismiss the Complaint.[3] ("November 27 Letter," Dkt. No. 24.) TFS-ICAP makes four main arguments. The first of these relates to timing: TFS-ICAP argues that the CFTC lacks authority over swap activity that occurred before October 12, 2012, when the final rule defining the term "swap" went into effect. (Id. at 1.) Furthermore, TFS-ICAP contends that the CFTC may not pursue a failure to supervise claim against TFS-ICAP, LLC for conduct that occurred before January 4, 2013, when it first registered as an Introducing Broker ("IB"). Second, with respect to TFS-ICAP, Ltd., the November 27 Letter states that the Complaint fails to allege facts showing that its communications with non-U.S. market participants had a "direct and significant connection with activities in, or effect on, commerce of the United States," as required by Section 2(i) of the Act, 7 U.S.C. Section 2(i) ("Section 2(i)"). (November 27 Letter at 1-2 (quoting Section

---

[2] The Court assumes the parties' familiarity with the facts and procedural history of this case and refers to its recently issued decision in this proceeding, which summarizes the Complaint. See Commodity Futures Trading Comm'n v. TFS-ICAP, LLC, No. 18 Civ. 8914, 2019 WL 6170636 (S.D.N.Y. Nov. 19, 2019) ("Woolfenden Order").

[3] The Court also received pre-motion letter exchanges from the Individual Defendants. Those letter exchanges also contemplated a motion to dismiss the Complaint. On November 20, 2019, the Court denied the motion so deemed by the Court as filed by Woolfenden to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2). Woolfenden Order, 2019 WL 6170636, at *12. On January 7, 2020, the Court denied the motion so deemed by the Court as filed by Dibb to dismiss the Complaint pursuant to Rule 12(b)(6). Commodity Futures Trading Comm'n v. TFS-ICAP, LLC, No. 18 Civ. 8914, 2020 WL 70940, at *4 (S.D.N.Y. Jan. 7, 2020) ("Dibb Order").

2(i)).) TFS-ICAP's third argument for dismissal is that the Complaint fails to plead fraud with particularity pursuant to Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure ("Rule 8(a)" and "Rule 9(b)"), because it improperly groups defendants together, fails to allege the specifics of the allegedly fraudulent misconduct, and is otherwise vague. (November 27 Letter at 2-3.) Last, the Corporate Defendants assert that the CFTC fails to allege that the purportedly false communications were made "in connection with" a swap and were material, as required by the Act. (Id. at 3.)

By letter dated December 4, 2018, the CFTC responded to the November 27 Letter. (See "December 4 Letter," Dkt. No. 28.) The CFTC argues, first, that the Complaint explicitly defines the charging period for the alleged violations as following the effective date of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. 111-203, 124 Stat. 1376 ("Dodd-Frank"), and in any event alleges misconduct in 2013, 2014, and 2015; the CFTC further disputes that it may not pursue a failure to supervise claim for conduct that occurred before TFS-ICAP LLC registered as an IB. (Id. at 1-2.) The CFTC next notes that it does not seek relief from TFS-ICAP Ltd. for communications with non-U.S. market participants that have no nexus with the United States. (Id. at 2.) Third, the CFTC contends that the Complaint does not improperly group the Corporate Defendants together. (Id.) Fourth, the CFTC urges the Court to reject the Corporate Defendants'

arguments pursuant to Rules 8(a) and 9(b) regarding the specificity of the Complaint, and points to allegations that, in their view, satisfy Rules 8(a) and 9(b). Last, the CFTC disagrees with TFS-ICAP's view that the Complaint does not sufficiently allege that the fraudulent conduct was "in connection with" a swap or was material. (Id. at 3.)

By letter dated December 17, 2018, TFS-ICAP alerted the Court that its letter exchange with the CFTC had not resolved their disputes regarding what the Corporate Defendants believed to be deficiencies in the Complaint. (See "December 17 Letter," Dkt. No. 32.) TFS-ICAP reiterated its belief that a motion to dismiss pursuant to Rule 12(b)(6) was warranted. The December 17 Letter narrowed the parties' areas of disagreement to three issues: (1) whether the CFTC may assert claims for swap activity that occurred before October 12, 2012, pursuant to Sections 4b(a)(2) and 4c(a)(1) of the Act, 7 U.S.C. Sections 6b, 6c ("Section 4b(a)(2)" and "Section 4c(a)(1)") and 17 C.F.R. Section 166.3 ("Regulation 166.3"); (2) whether the Complaint does not satisfy Section 2(i) insofar as it fails to show that TFS-ICAP Ltd.'s communications with non-U.S. market participants had a direct and significant connection with activities in, or effect on, U.S. commerce; and (3) whether the Complaint fails to satisfy the particularity requirements of Rule 9(b) and the pleading requirements of Rule 8(a). TFS-ICAP noted that while it was only requesting resolution

of these three issues, it did not waive any of the other arguments made in its November 27 Letter. (December 17 Letter at 1.)

The Court held a telephone conference with counsel for the Corporate Defendants and counsel for Dibb on April 4, 2019 (the "April 4 Telephone Conference"). (See Dkt. Minute Entry dated 4/4/2019.) During the April 4 Telephone Conference, the Court indicated to the parties its preliminary view that the Complaint alleges sufficient facts to survive a Rule 12(b)(6) motion to dismiss. The Court invited additional letter-briefing from Dibb regarding his arguments for dismissal of Count III of the Complaint, and the Court also afforded the CFTC an opportunity to respond to Dibb's supplemental letter. Following the submission of these letters, the Court denied Dibb's motion to dismiss Count III of the Complaint. Dibb Order, 2020 WL 70940, at *4.

Given the detailed and extensive letter exchange between the CFTC and the Corporate Defendants, and with the benefit of additional briefing between the CFTC and the Individual Defendants, the Court now construes the November 27 Letter and the December 18 Letter from TFS-ICAP as a motion to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), aff'd sub nom. Tenney v. Credit Suisse First Boston Corp., No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006); accord In re MF Glob. Holdings Ltd. Sec. Litig., 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013). In this context, the Court must draw reasonable inferences in favor of the non-moving party. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the claim as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

### III. DISCUSSION

The Court denies the Motion because the three issues raised by TFS-ICAP in its December 17 Letter do not warrant dismissal.

The first issue raised by TFS-ICAP relates to the timing of the allegations in the Complaint. TFS-ICAP argues that the CFTC may not pursue claims based on conduct that occurred before October 12, 2012, at least with respect to Counts I, III, and IV, alleging violations of Sections 4b(a)(2) and 4c(a)(1) and Regulation 166.3. As the CFTC notes in its December 4 Letter, it is not seeking relief for conduct that pre-dates the effective date of the pertinent laws. That is how the Complaint defines the "Charging Period": the time from 2012 through August 2015, "following the effective date of . . . Dodd-Frank . . . and its related regulations." (Complaint ¶ 7.) Even assuming, for the sake of argument, that the CFTC may not seek relief for swap activities that violated Dodd-Frank provisions that refer to the term "swap" but occurred before the definition of swap was promulgated, that argument would not be dispositive of any Count because -- as the CFTC notes -- the Complaint contains "myriad allegations of misconduct in 2013, 2014, and 2015." (December 4 Letter at 1; see also, e.g., Complaint ¶¶ 82-85, 87-93, 95-102, 104-106.) The Court sees no reason to discount the CFTC's representation to the Court that it "does not seek relief for any conduct that pre-dates CFTC authority" (December 4 Letter at 1), nor any reason to disregard the context that can be gleaned from allegations that pre-date the Charging Period. E.g., Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 354 (4th Cir. 1994) ("Although these incidents occurred prior to the limitations period, the evidence of a pattern or

7

practice that pre-dated the relevant charge period is relevant for the limited purpose of inferring from it the continuation of the practice into the limitations period.").

TFS-ICAP's second argument for dismissal is that the Complaint fails to allege facts showing that TFS-ICAP Ltd.'s communications with non-U.S. market participants had a "direct and significant connection with activities in, or effect on, commerce of the United States," as required by Section 2(i). (December 17 Letter at 2 (quoting Section 2(i)).) The CFTC counters that "the Complaint does not seek relief from [TFS-ICAP] Ltd. for communications between its employees and non-U.S. market participants that have no nexus to the [United States]." (December 4 Letter at 2.) Instead, the CFTC's requested relief as to TFS-ICAP Ltd. addresses actions taken during the period when TFS-ICAP Ltd. brokered FX options for U.S. clients. (Id.) For example, Paragraph 84 of the Complaint alleges that from January to June of 2014, brokers on the London desk assisted in brokering Latin American FX options for U.S. clients. As alleged in Paragraphs 90 through 92, London-based brokers printed trades while brokering Latin American FX options for New York-based clients, such as on April 24, 2014. The Court is satisfied with the CFTC's explanation of the limits of the relief it seeks from TFS-ICAP Ltd.

Third and last, TFS-ICAP argues that the Complaint does not comply with Rules 8(a) and 9(b). This argument fails. The Complaint complies with Rule 9(b) because it alleges specific occurrences of

flying prices and printing trades. For example, the allegations in Paragraphs 87 through 89 include details regarding printed trades on April 15, 2015, May 12, 2015, and July 20, 2015. The allegation in Paragraph 96 includes details regarding a flown price on April 4, 2014. Each of these allegations establishes who was acting, what happened, when it happened, and how. These details provide sufficient notice of the claim and enough information for the Corporate Defendants to respond. See United States v. Wells Fargo Bank, N.A., 972 F. Supp. 2d 593, 615 (S.D.N.Y. 2013) ("The purpose of Rule 9(b)'s specificity requirement is to provide the defendant with fair notice of a plaintiff's claim and adequate information to frame a response." (internal quotation marks omitted)); see also id. at 616 (approving of the use of representative samples of a broader class of claims if the defendant will "be able to infer with reasonable accuracy the precise claims at issue by examining the . . . representative samples" (internal quotation marks omitted)).

For similar reasons, and for the reasons stated in the Dibb Order, the Court finds that the Complaint does not violate Rule 8(a) because it sufficiently sets forth the CFTC's grounds for believing it is entitled to relief. Both the allegations regarding specific instances of flown prices and printed trades, described above, along with more general descriptions of the alleged misconduct (e.g., Complaint ¶¶ 41-61), are sufficient "to give fair notice of a claim and the grounds upon which it rests." Elektra

9

<u>Entm't Grp., Inc. v. Barker</u>, 551 F. Supp. 2d 234, 238 (S.D.N.Y. 2008) (internal quotation marks omitted).

### IV. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendants TFS-ICAP LLC and TFS-ICAP Ltd. (together, "TFS-ICAP") (Dkt. Nos. 24 and 32) to dismiss the Complaint of plaintiff Commodity Futures Trading Commission (Dkt. No. 5) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **DENIED**.

**SO ORDERED.**

Dated:  New York, New York
21 January 2020

_____
Victor Marrero
U.S.D.J.