**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___12/4/2020___

---

COMMODITY FUTURES
TRADING COMMISSION

            **Plaintiff,**

v.

TFS-ICAP, LLC, TFS-ICAP LTD., IAN DIBB,
and JEREMY WOOLFENDEN,

            **Defendants.**

**No. 18-cv-8914 (VM)**

**ECF Case**

---

## CONSENT ORDER FOR INJUNCTION, CIVIL MONETARY PENALTY AND OTHER EQUITABLE RELIEF AGAINST ALL DEFENDANTS

### I.      INTRODUCTION

On September 28, 2018, Plaintiff Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint against the above-captioned Defendants (the "Defendants") seeking injunctive and other equitable relief, as well as the imposition of civil penalties for violations of Sections 4b(a)(2), 6(c)(1), and 4c(a)(1)-(2) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 6b(a)(2), 9(1), 6c(a)(1)-(2) (2012), and Commission Regulations ("Regulation") 166.3 and 180.1, 17 C.F.R. §§ 166.3, 180.1 (2018).

### II.      CONSENTS AND AGREEMENTS

To effect settlement of all charges alleged in the Complaint against TFS-ICAP LLC and TFS-ICAP Ltd. (collectively, "TFS-ICAP Defendants") and Ian Dibb and Jeremy Woolfenden (collectively, the "Individual Defendants") without a trial on the merits, the Defendants:

1.      Consent to the entry of this Judgment and Consent Order for Injunction, Civil Monetary Penalty, and Other Equitable Relief against All Defendants ("Consent Order");[1]

2.      Affirm that an authorized representative thereof has read and agreed to this Consent Order voluntarily, and that no promise, other than as specifically contained herein, or threat, has been made by the CFTC or any member, officer, agent, or representative thereof, or by any other person, to induce consent to this Consent Order;

3.      Acknowledge service of the summons and Complaint;

4.      Admit the jurisdiction of this Court over them and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018);

5.      Admit the jurisdiction of the CFTC over the conduct and transactions at issue in this action pursuant to the Act;

6.      Admit that venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e);

7.      Respectively admit that:

     a.  TFS-ICAP LLC has been registered with the CFTC as an Introducing Broker since January 2013;

---

[1]      The TFS-ICAP Defendants consent to the use of the Admissions, findings of fact, and conclusions of law in this Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agree that they shall be taken as true and correct and be given preclusive effect therein, without further proof.  The TFS-ICAP Defendants do not consent, however, to the use of this Order, or the findings or conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party or claimant, other than:  a proceeding in bankruptcy or receivership; or a proceeding to enforce the terms of this Order.  The TFS-ICAP Defendants do not consent to the use of this Order, or the findings or conclusions in this Order, by any other party in any other proceeding.

     The Individual Defendants consent to the use of the findings of fact, and conclusions of law in this Order in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party or claimant, and agree that they shall be taken as true and correct and be given preclusive effect therein, without further proof.  The Individual Defendants do not consent, however, to the use of this Order, or the findings or conclusions herein, as the sole basis for any other proceeding brought by the Commission or to which the Commission is a party or claimant, other than:  a proceeding in bankruptcy or receivership; or a proceeding to enforce the terms of this Order. The Individual Defendants do not consent to the use of this Order, or the findings or conclusions in this Order, by any other party in any other proceeding.

    b.   TFS-ICAP Ltd. has been registered with the CFTC as an Introducing Broker since November 2015;

    c.   Ian Dibb was registered with the CFTC as an Associated Person of TFS-Derivatives Ltd. from December 2014 to October 2016 and as an Associated Person of TFS-ICAP Ltd. from November 2015 to November 2018;

    d.   Jeremy Woolfenden was registered with the CFTC as an Associated Person of TFS-ICAP Ltd. from November 2015 through November 2018 and as an Associated Person of TFS-ICAP Derivatives Ltd. from December 2014 through October 2016.

8.      Waive:

    a.   Any and all claims that they may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2018) and 28 U.S.C. § 2412 (2018), and/or the rules promulgated by the Commission in conformity therewith, Part 148 of the Regulations, 17 C.F.R. pt. 148 (2020), relating to, or arising from, this action;

    b.   Any and all claims that they may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. No. 104-121, tit. II, §§ 201–253, 110 Stat. 847, 857–74 (codified as amended at 28 U.S.C. § 2412 and in scattered sections of 5 U.S.C. and 15 U.S.C.), relating to, or arising from, this action;

    c.   Any claim of Double Jeopardy under U.S. law based upon the institution of this action or the entry in this action of any order imposing a civil monetary penalty or any other relief, including this Consent Order; and

    d.   Any and all rights of appeal from this action;

9.      Consent to the continued jurisdiction of this Court over them for the purpose of implementing and enforcing the terms and conditions of this Consent Order and for any other purpose relevant to this action, even if any of the Defendants now or in the future reside outside the jurisdiction of this Court;

10.     Agree that they will not oppose enforcement of this Consent Order on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure and hereby waive any objection based thereon;

11.     Agree that neither they nor any of their agents or employees under their authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the Findings of Fact or Conclusions of Law in this Consent Order, or creating or tending to create the impression that the Complaint and/or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect their:  (a) testimonial obligations, in the United States or elsewhere; or (b) right to take positions in other proceedings to which the CFTC is not a party.  The Defendants shall comply with this agreement, and shall undertake all reasonable steps necessary to ensure that all of their agents and/or employees under their authority or control understand and comply with this agreement;

12.     Agree to provide immediate notice to this Court and the CFTC by certified mail, in the manner required by paragraph 77 of this Consent Order, of any bankruptcy proceeding filed by, on behalf of, or against him/her/them/it, whether inside or outside the United States ("Notice Obligation").  A defendant's Notice Obligation shall terminate ninety (90) days after such defendant's civil monetary penalty obligation, as set forth in paragraphs 69-73 of this Order, is satisfied in full; and

13.     Agree that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy, if there was a basis in law and fact to do so, against the Defendants in any other proceeding.  Nor shall any provision of this Consent Order confer rights on any other person or entity to seek any legal or equitable remedy against the Defendants that does not otherwise exist independently of this agreement.

*The TFS-ICAP Defendants*:

14.     The TFS-ICAP Defendants agree that the admissions in Section III of this

Consent Order supersede any prior denials or other inconsistent statements made by the TFS-

ICAP Defendants in this action.

*The Individual Defendants*:

15.     The Individual Defendants consent to the entry of this Consent Order without

admitting or denying the allegations of the Complaint or any findings or conclusions in this

Consent Order, except as to jurisdiction, venue, and their respective registration status, which

they admit.

### III.     ADMISSIONS BY THE TFS-ICAP DEFENDANTS

16.     The TFS-ICAP Defendants admit to paragraphs 17 to 41 below:

*Background*

17.     Beginning in 2001, brokers employed by the TFS-ICAP Defendants ("TFS-ICAP

brokers") used an FX options proprietary electronic trading platform called Volbroker (the

"Platform") and made it available to TFS-ICAP clients.   The Platform operated alongside broker

interaction with traders via voice and other communications.

18.     One functionality of the Platform allowed clients to post live bids and offers for

FX options on certain currency pairs, using one of three options strategies, for specified

tenors.  (The "tenor" of an option refers to the length of time before it expires (e.g., 1 week, 1

month, 3 months, 6 months, 1 year, etc.).)

19.     This functionality of the Platform was referred to as the tiles.  It also allowed

brokers to post bids and offers on a bank's behalf when directed by the bank's trader.

20.     At any moment in time, the best bid and offer (unless there were no bids or offers) appeared in the tile for the prescribed option.

21.     The bids and offers were anonymous, except to the bank that was responsible for the bid or offer and to the brokers, who were able to see which institution was behind each bid and offer.

22.     To trade on a particular bid or offer posted on the Platform screen, a bank's trader—or a broker on a bank trader's behalf—simply clicked on it and entered the volume of the desired trade at that level.  This would result in a flash on the Platform screen, notifying users that the option had traded at that particular volatility level.  It also resulted in the basic trade details appearing in a "trade ticker," which was also visible to users.  The details of the banks' identities would only be known to the trading banks for each trade and the TFS-ICAP brokers.

23.     TFS-ICAP brokers could configure their Platform screens to include electronic tabs containing the names of certain bank clients of the TFS-ICAP Defendants.  The bank names on these tabs were called bank "aliases."

24.     To post a bid or offer on behalf of a bank at the direction of the bank trader, the broker clicked on the alias of that bank and then posted the price (i.e., volatility level) in the tile corresponding to the currency pair and tenor the trader desired to bid or offer.  Similarly, to hit or lift an existing price on behalf of a trader at a bank, the broker clicked the bank's alias and then clicked on the tile of the option upon which the trader wanted to transact.  Again, the identity of the banks trading would only be disclosed to the trading banks at the point that the volatility was hit and the trade flashed.

25.     Starting in or around 2005, certain "TFS" aliases were added to the alias list.  Rather than being limited to posting prices under the alias of a trading institution, brokers

6

were then able to post prices under aliases such as "TFS-NY" (TFS-New York), "TFS-LDN"

(TFS-London), and "TFS-FFT" (TFS Frankfurt).

*Conduct*

26.     On multiple occasions between January 2014 and August 2015, TFS-ICAP

brokers on the Emerging Markets desks in both London and New York communicated to one or

more U.S.-based bank clients bids or offers that had not been directed by a bank client.

27.     On those occasions, TFS-ICAP brokers represented to U.S.-based bank clients

that there were bids or offers for an FX option at a particular level when, in fact, no trading

institution had bid or offered the option at that level.  Communicating unsupported bids and

offers was referred to in the FX options industry as "flying" prices.

28.     The TFS-ICAP brokers in New York and London who engaged in the practice of

flying did so by posting unsupported bids and offers under one of the various "TFS" aliases.

29.     On multiple occasions between January 2014 and August 2015, TFS-ICAP

brokers on the Emerging Markets desks in both London and New York communicated to one or

more U.S.-based bank clients that trades had occurred when a trade had not, in fact, occurred.

30.     This practice was known in the industry as "printing," "spoofing," or "calling" a

trade.

31.     One way TFS-ICAP brokers "printed" trades to bank traders during this period

was by using one TFS alias to aggress on a price (a bid or offer) posted under another TFS alias,

causing a flash on the traders' Platform screens and signaling to them that a trade had occurred

when one had not actually occurred.

32.     Flying prices and printing trades as described above violated Sections 4b(a)(2),

6(c)(1), and 4c(a)(1)-(2) of the Act, 7 U.S.C. §§ 6b(a)(2), 9(1), 6c(a)(1)-(2) (2018), and

Regulation 180.1, 17 C.F.R. § 180.1 (2020), to the extent such conduct was directed in part at or related to the solicitation of or formation of FX Options contracts with U.S. persons.

33.     The TFS-ICAP brokers engaged in the conduct described above within the scope of their employment with the TFS-ICAP Defendants. Accordingly, the TFS-ICAP Defendants are liable for these violations pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018).  The TFS-ICAP Defendants are also liable under Regulation 166.3, 17 C.F.R. § 166.3 (2020), for its failure to supervise broker conduct.

*Supervision*

34.     Dibb was the CEO of the TFS-ICAP Defendants from on or about February 2012 to at least 2017.  As the CEO, he oversaw the day-to-day operations of the joint venture.

35.     From at least January 2014 through September 2015, Defendant Dibb was ultimately responsible for ensuring that there was a reasonably adequate system of controls in place to supervise TFS-ICAP broker conduct, including brokers on the Emerging Markets desks in the U.S and U.K.

36.     As CEO, Dibb was ultimately responsible for implementing company policies and procedures and ensuring that brokerage conduct was in compliance with the law.

37.     From at least January 2014 through September 2015, Dibb was in a position to verify whether or not the brokers under his supervision were flying and printing and, if so, to direct that the misconduct stop.

38.     From at least January 2014 through at least September 2015, Defendant Woolfenden, while employed by TFS-ICAP Ltd., held the title of Global Head of Emerging Markets at TFS-ICAP—a position that at least gave him supervisory responsibility over all TFS-

ICAP brokers on the Emerging Markets desks in New York and London and authority over hiring emerging market brokers.

39.     From at least January 2014 through September 2015, Woolfenden was in a position to verify whether brokers under his supervision, including those in the U.S., were flying and printing and, if so, to direct that the misconduct stop.

40.     From at least January 2014 through September 2015, both Dibb and Woolfenden were responsible for maintaining and enforcing a reasonably adequate system of internal supervision.

41.     At no point from January 2014 through September 2015 did the TFS-ICAP Defendants have a policy that specifically and expressly prohibited flying prices or printing trades.

## IV.     FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR INJUNCTION, CIVIL MONETARY PENALTY AND ANCILLARY RELIEF

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Consent Order and that there is no just reason for delay.  The Court therefore directs the entry of the following findings of fact, conclusions of law, permanent injunction and equitable relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), as set forth herein.

**THE COURT HEREBY FINDS AND CONCLUDES THAT:**

### A.  Findings of Fact

**The Parties**

42.     Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with administering and enforcing the Act and the Regulations.

43.     Defendant TFS-ICAP, LLC has been registered with the CFTC as an Introducing Broker since January 2013.

44.     TFS-ICAP Ltd. has been registered with the CFTC as an Introducing Broker since November 2015.

45.     Defendant Jeremy Woolfenden was registered with the CFTC as an Associated Person of TFS-ICAP Ltd. from November 2015 to November 2018.  From December 2014 to October 2016, Woolfenden was registered with the CFTC as an Associated Person of TFS Derivatives Ltd.

46.     Defendant Ian Dibb was registered with the CFTC as an Associated Person of TFS-ICAP Ltd. from November 2015 to November 2018.  From December 2014 to October 2016, Dibb was registered with the CFTC as an Associated Person of TFS-Derivatives Ltd.

**The Conduct**

47.     On multiple occasions between January 2014 and August 2015, TFS-ICAP brokers on the Emerging Markets desks in both London and New York communicated to one or more U.S.-based bank clients bids or offers that had not been directed by a bank client.

48.     On those occasions, TFS-ICAP brokers represented to U.S.-based bank clients that there were bids or offers for an FX option at a particular level when, in fact, no trading institution had bid or offered the option at that level.  Communicating unsupported bids and offers was referred to in the FX options industry as "flying" prices.

49.     The TFS-ICAP brokers in New York and London who engaged in the practice of flying did so by posting unsupported bids and offers under one of the various "TFS" aliases.

10

50.     On multiple occasions between January 2014 and August 2015, TFS-ICAP brokers on the Emerging Markets desks in both London and New York communicated to one or more U.S.-based bank clients that trades had occurred when a trade had not, in fact, occurred.

51.     This practice was known in the industry as "printing," "spoofing," or "calling" a trade.

52.     One way TFS-ICAP brokers "printed" trades to bank traders during this period was by using one TFS alias to aggress on a price (a bid or offer) posted under another TFS alias, causing a flash on the traders' Platform screens and signaling to them that a trade had occurred when one had not actually occurred.

53.     The TFS-ICAP brokers engaged in the conduct described above within the scope of their employment with the TFS-ICAP Defendants.

**Individual Defendants' Supervisory Roles**

54.     Dibb was the CEO of the TFS-ICAP Defendants from on or about January 2012 to at least 2017.

55.      From at least January 2014 through September 2015, Defendant Dibb was ultimately responsible for ensuring that there was a reasonably adequate system of controls in place to supervise TFS-ICAP broker conduct, including brokers on the Emerging Markets desks in the U.S and U.K.

56.     As CEO, Dibb was ultimately responsible for implementing company policies and procedures and ensuring that brokerage conduct was in compliance with the law.

57.     From at least January 2014 through at least September 2015, Defendant Woolfenden, while employed by TFS-ICAP Ltd., held the title of Global Head of Emerging Markets at TFS-ICAP—a position that at least gave him control and supervisory responsibility

over all TFS-ICAP brokers on the Emerging Markets desks in New York and London and authority over hiring emerging market brokers.

58.     From at least January 2014 through September 2015, both Dibb and Woolfenden were responsible for maintaining and enforcing a reasonably adequate system of internal supervision.

59.     At no point from January 2014 through September 2015 did the TFS-ICAP Defendants have a policy that specifically and expressly prohibited flying prices or printing trades.

60.     From at least January 2014 through September 2015, both Dibb and Woolfenden were in a position to verify whether brokers under their supervision, including those in the U.S., were flying and printing and, if so, to direct that the misconduct stop.

**B.  Conclusions of Law**

61.     This Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2018), provides that the Commission may bring actions for injunctive relief or to enforce compliance with the Act or any rule, regulation, or order thereunder in the proper district court of the United States whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

62.     Venue lies properly within this District pursuant to Section 6c(e) of the Act, 7 U.S.C. 13a-1(e).

63.     By the conduct described above, TFS-ICAP LLC and TFS-ICAP Ltd. are liable for having violated Sections 4b(a)(2), 6(c)(1), and 4c(a)(1)-(2) of the Act, 7 U.S.C. §§ 6b(a)(2), 9(1), 6c(a)(1)-(2) (2018), and Regulations 166.3 and 180.1, 17 C.F.R. §§ 166.3, 180.1 (2020), as alleged in Counts I through IV of the Complaint.

64.     By the conduct described above, the Individual Defendants failed to supervise diligently certain activities of the certain officers, employees, and agents of TFS-ICAP and are therefore liable for having violated 17 C.F.R. § 166.3, as alleged in Count IV of the Complaint.

65.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices found in the Order and in similar acts and practices in violation of the Act and Regulations.

**IT IS HEREBY ORDERED THAT:**

66.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Defendants are permanently restrained, enjoined and prohibited from directly or indirectly:

    a.    Willfully deceiving or attempting to deceive other persons in or in connection with any order to make, or the making of, any swap in violation of Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2018).

    b.    Employing any manipulative or deceptive device or contrivance, making any materially misleading statement, or engaging or attempting to engage in any act, practice or course of business which operates or would operate as a fraud in connection with a swap in violation of Section 6(c)(1) of the Act, 7 U.S.C. § 9(1) (2018), and Regulation 180.1, 17 C.F.R. § 180.1 (2020).

13

    c. Entering into or confirming the execution of a fictitious sale or causing a price to be reported, registered, or recorded that is not a true and bona fide price in violation of Section 4c(a)(1)-(2) of the Act, 4 U.S.C. § 6c(a)(1)(2) (2018).

    d. Failing to diligently supervise their employees and agents in violation of Regulation 166.3, 17 C.F.R. § 166.3 (2020).

67. The Individual Defendants undertake not to apply for registration or claim exemption from registration with the Commission in any capacity, or engage in any activity requiring such registration or exemption from registration with the Commission for a period of five (5) years.

68. TFS-ICAP LLC and TFS-ICAP Ltd. shall pay, jointly and severally, a civil monetary penalty in the amount of seven million dollars ($7,000,000) ("the TFS-ICAP CMP Obligation") in accordance with the schedule detailed in paragraphs 69 and 70 below.

69. TFS-ICAP Defendants shall pay five million dollars ($5,000,000), within twenty (20) days of the date of the entry of this Consent Order.  If this portion of the CMP Obligation is not paid in full within twenty (20) days of the date of entry of this Consent Order, then post-judgment interest shall accrue on this portion of the CMP Obligation beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2018).

70. TFS-ICAP Defendants shall pay the remaining two million dollars ($2,000,000) in three equal annual installments, the first of which shall be paid within one year of the entry of this Consent Order, the second of which shall be paid within two years of the entry of this Consent Order, and the third of which shall be paid within three years of the entry of this Consent Order.

71.     Defendant Dibb shall pay a civil monetary penalty in the amount of five hundred thousand dollars ($500,000) (the "Dibb CMP Obligation") within ninety (90) days of the date of the entry of this Consent Order.

72.     Defendant Woolfenden shall pay a civil monetary penalty in the amount of five hundred thousand dollars ($500,000) (the "Woolfenden CMP Obligation") within ninety (90) days of the date of the entry of this Consent Order.

73.     If any part of any Defendant's CMP Obligation is not paid in full by its respective due date, then that Defendant's entire CMP obligation shall be due immediately and post-judgment interest shall accrue on that CMP Obligation beginning on that due date and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961 (2018).

74.     Defendants shall pay their CMP Obligation and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order.  If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those

15

instructions.  Each Defendant shall accompany payment of its CMP Obligation with a cover

letter that identifies the Defendant and the name and docket number of this proceeding.  Each

Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the

Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155

21st Street, NW, Washington, D.C. 20581.

      75.    Partial Satisfaction:  Acceptance by the Commission of any partial payment of

any Defendant's CMP Obligation shall not be deemed a waiver their obligation to make further

payments pursuant to this Consent Order, or a waiver of the Commission/CFTC's right to seek to

compel payment of any remaining balance.

      76.    **Cooperation:** Defendants shall cooperate fully and expeditiously with the

Commission/CFTC, including the Commission/CFTC's Division of Enforcement, in this action,

and in any current or future Commission/CFTC investigation or action related thereto.

Defendants shall also cooperate in any investigation, civil litigation, or administrative matter

related to, or arising from, this action.

      77.    Notice: All notices required to be given by any provision of this Consent Order

shall be sent certified mail, return receipt requested, as follows:

      a.   Notice to Commission:

        Manal Sultan
        Commodity Futures Trading Commission
        140 Broadway 19th Fl.
        New York, NY 10005

      b.   Notice to TFS-ICAP Defendants shall be sent to:  Tim Carey, Winston &

        Strawn LLP, 35 W. Wacker Drive, Chicago, IL  60601-9703, and emailed to

        tjcarey@winston.com.

     c.   Notice to Defendant Dibb shall be sent to:  Jonathan Streeter, Dechert LLP, 1095 Avenue of the Americas, New York, NY 10036, and emailed to jonathan.streeter@dechert.com.

     d.   Notice to Defendant Woolfenden shall be sent to:  Reed Brodsky, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166-0193, and emailed to rbrodsky@gibsondunn.com, and Steve Melrose, Gibson, Dunn & Crutcher UK LLP, Telephone House 2-4 Temple Avenue, London, EC47 0HB, and smelrose@gibsondunn.com.

78.    All such notices to the Commission shall reference the name and docket number of this action.

79.    Change of Address/Phone:  Until such time as each Defendant satisfies in full its CMP Obligation as set forth in this Consent Order, each Defendant shall provide written notice to the Commission by certified mail of any change to either or both of their respective telephone numbers or mailing addresses within ten (10) calendar days of the change.

80.    Entire Agreement and Amendments:  This Consent Order incorporates all of the terms and conditions of the settlement among the parties hereto to date.  Nothing shall serve to amend or modify this Consent Order in any respect whatsoever, unless:  (a) reduced to writing; (b) signed by all parties hereto; and (c) approved by order of this Court.

81.    Invalidation:  If any provision of this Consent Order or if the application of any provision or circumstance is held invalid, then the remainder of this Consent Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

82.     Waiver:  The failure of any party to this Consent Order at any time to require performance of any provision of this Consent Order shall in no manner affect the right of the party at a later time to enforce the same or any other provision of this Consent Order.  No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

83.     Continuing Jurisdiction of this Court:  This Court shall retain jurisdiction of this action to ensure compliance with this Consent Order and for all other purposes related to this action, including any motion by any Defendant to modify or for relief from the terms of this Consent Order.

84.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Consent Order shall be binding upon all Defendants, upon any person under any Defendant's authority or control, and upon any person who receives actual notice of this Consent Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with any Defendant.

85.     Authority:  Peter Weston hereby warrants that he is Chief Compliance Officer of TFS-ICAP Ltd., and that this Consent Order has been duly authorized by TFS-ICAP LLC and he has been duly empowered to sign and submit this Consent Order on behalf of TFS-ICAP LLC.

86.     Authority:  Peter Weston hereby warrants that he is Chief Compliance Officer of TFS-ICAP Ltd., and that this Consent Order has been duly authorized by TFS-ICAP Ltd. and he has been duly empowered to sign and submit this Consent Order on behalf of TFS-ICAP Ltd.

87.     Counterparts and Facsimile Execution:  This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall

become effective when one or more counterparts have been signed by each of the parties hereto and delivered (by facsimile, e-mail, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart.  Any counterpart or other signature to this Consent Order that is delivered by any means shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Consent Order.

88.     Contempt:  Defendants understand that the terms of the Consent Order are enforceable through contempt proceedings, and that, in any such proceedings they may not challenge the validity of this Consent Order.

89.     Agreements and Undertakings:  Defendants shall comply with all of the undertakings and agreements set forth in this Consent Order.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this *Consent Order for Injunction, Civil Monetary Penalty and Other Equitable Relief Against All Defendants* forthwith and without further notice.

**IT IS SO ORDERED** on this __4th__ day of _____December_____, **2020**.

_____
**Hon. John P. Cronan**
**UNITED STATES DISTRICT JUDGE**

CONSENTED TO AND APPROVED:

Samuel Wasserman
Brent Tomer
Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005

*Attorneys for the Plaintiff*

BY: _____
     TFS-ICAP LLC

BY: _____
     TFS-ICAP Ltd.

_____
Timothy J. Carey
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL  60601
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700
tjcarey@winston.com

*Attorney for Defendants TFS-ICAP LLC and TFS-ICAP Ltd*

BY: _____
     Ian Dibb

_____
Jonathan R. Streeter
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 698-3826
Facsimile:  (212) 314-0046
jonathan.streeter@dechert.com

*Attorney for Defendant Ian Dibb*

BY: _____
     Jeremy Woolfenden

_____
Reed Brodsky
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY  10166-0193
Direct Office Number: 212.351.5334
Mobile Number: 917.574.8200
Facsimile: 212.351.4035
rbrodsky@gibsondunn.com

*Attorney for Defendant Jeremy Woolfenden*

CONSENTED TO AND APPROVED:

_____
Samuel Wasserman
Brent Tomer
Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005

*Attorneys for the Plaintiff*

BY: _Peter Weston_____
TFS-ICAP LLC

BY: _Peter Weston_____
TFS-ICAP Ltd.

Timothy J. Carey
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL  60601
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700
tjcarey@winston.com

*Attorney for Defendants TFS-ICAP LLC and TFS-ICAP Ltd*

BY: _____
Ian Dibb

_____
Jonathan R. Streeter
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 698-3826
Facsimile:  (212) 314-0046
jonathan.streeter@dechert.com

*Attorney for Defendant Ian Dibb*

BY: _____
Jeremy Woolfenden

_____
Reed Brodsky
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY  10166-0193
Direct Office Number:  212.351.5334
Mobile Number: 917.574.8200
Facsimile:  212.351.4035
rbrodsky@gibsondunn.com

*Attorney for Defendant Jeremy Woolfenden*

CONSENTED TO AND APPROVED:

_____
Samuel Wasserman
Brent Tomer
Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005

*Attorneys for the Plaintiff*

BY: _____
　　　TFS-ICAP LLC

BY: _____
　　　TFS-ICAP Ltd.

_____
Timothy J. Carey
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL  60601
Telephone:  (312) 558-5600
Facsimile:  (312) 558-5700
tjcarey@winston.com

*Attorney for Defendants TFS-ICAP LLC and
TFS-ICAP Ltd*

BY: _____
　　　Ian Dibb

_____
Jonathan R. Streeter
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 698-3826
Facsimile:  (212) 314-0046
jonathan.streeter@dechert.com

*Attorney for Defendant Ian Dibb*

BY: _____
　　　Jeremy Woolfenden

_____
Reed Brodsky
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY  10166-0193
Direct Office Number:  212.351.5334
Mobile Number: 917.574.8200
Facsimile: 212.351.4035
rbrodsky@gibsondunn.com

*Attorney for Defendant Jeremy Woolfenden*

20

CONSENTED TO AND APPROVED:

BY: _____
      TFS-ICAP LLC

_____
Samuel Wasserman
Brent Tomer
Commodity Futures Trading Commission
140 Broadway, 19th Floor
New York, NY 10005

BY: _____
      TFS-ICAP Ltd.

*Attorneys for the Plaintiff*

Timothy J. Carey
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
tjcarey@winston.com

*Attorney for Defendants TFS-ICAP LLC and
TFS-ICAP Ltd*

BY: _____
      Ian Dibb

BY: _____
      Jeremy Woolfenden

Jonathan R. Streeter
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036
Telephone: (212) 698-3826
Facsimile: (212) 314-0046
jonathan.streeter@dechert.com

Reed Brodsky
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Direct Office Number: 212.351.5334
Mobile Number: 917.574.8200
Facsimile: 212.351.4035
rbrodsky@gibsondunn.com

*Attorney for Defendant Ian Dibb*

*Attorney for Defendant Jeremy Woolfenden*

20

CONSENTED TO AND APPROVED:

_____  BY: _____

Samuel Wasserman        TFS-ICAP LLC
Brent Tomer
Commodity Futures Trading Commission   BY: _____
140 Broadway, 19th Floor      TFS-ICAP Ltd.
New York, NY 10005

*Attorneys for the Plaintiff*      _____

                Timothy J. Carey
                Winston & Strawn LLP
                35 W. Wacker Drive
                Chicago, IL 60601
                Telephone: (312) 558-5600
                Facsimile: (312) 558-5700
                tjcarey@winston.com

                *Attorney for Defendants TFS-ICAP LLC and*
                *TFS-ICAP Ltd*

BY: _____   BY: _____

    Ian Dibb            Jeremy Woolfenden

_____      _____

Jonathan R. Streeter        Reed Brodsky
Dechert LLP            Gibson, Dunn & Crutcher LLP
1095 Avenue of the Americas      200 Park Avenue
New York, New York 10036      New York, NY 10166-0193
Telephone: (212) 698-3826      Direct Office Number: 212.351.5334
Facsimile: (212) 314-0046      Mobile Number: 917.574.8200
jonathan.streeter@dechert.com      Facsimile: 212.351.4035
                rbrodsky@gibsondunn.com

*Attorney for Defendant Ian Dibb*      *Attorney for Defendant Jeremy Woolfenden*